1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12
13
14
15
16

| | |
|---|---|
| GREGORY LANGADINOS,<br><br>          Plaintiff,<br><br>   v.<br><br>WASHINGTON STATE BAR ASSOCIATION, WASHINGTON STATE BAR ASSOCIATION BOARD OF GOVERNORS, LISA AMATANGEL, Associate Director; Litigation and Internal Operations, JULIE SHANKLAND, Coordinator; ADA/504 WSBA, WASHINGTON STATE SUPREME COURT,<br><br>          Defendants. | CASE NO. 2:23-cv-250<br><br>ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS |

17

## 1. INTRODUCTION

18
19
20
21
22
23

In response to the COVID-19 pandemic and civil rights protests following the murder of George Floyd, the Washington State Supreme Court waived the bar exam requirement for graduates of accredited law schools who were registered by the appropriate cutoff to take the July or September 2020 bar exams. This has been

1

2

called the "diploma privilege" option for admission to the Washington State Bar

Association (WSBA) and the practice of law in Washington.

3

4

        Plaintiff Gregory Langadinos, proceeding pro se,[1] sues the State Supreme

Court, the WSBA, and others, seeking admission to the Washington bar and

5

6

7

damages—in sum, he argues he was denied the diploma privilege because of his

disabilities. Both Defendants move to dismiss his complaint for lack of jurisdiction.

Dkt. Nos. 10, 11. The Court has reviewed the papers submitted in support of and in

8

9

10

opposition to the motions, and finds that oral argument is unwarranted. For the

reasons explained below, the Court GRANTS in part and DENIES in part

Defendants' motions to dismiss.

11

## 2.   BACKGROUND

12

13

        The Court accepts all facts as true from the complaint and construes them in

the light most favorable to Langadinos. Fed. R. Civ. P. 12(b)(6).

14

15

16

        Langadinos, a California resident, earned a juris doctor degree from the

Appalachian School of Law on May 8, 2004. Dkt. No. 1 ¶¶ 6, 36; *see also* Dkt. No. 1

at 100. The complaint is silent, however, about whether Langadinos has been

17

18

admitted to a state bar since his graduation or otherwise engaged in the practice of

law. *See generally id.*

19

20

        On consecutive days from March 3 to March 6, 2020, Langadinos "repeatedly

attempted to apply over the internet to register" and pay for the July 2020 bar exam

21

22

23

---

[1] In his complaint, Langadinos states he is proceeding pro se until the Court rules
on his California attorney's application for leave to appear pro hac vice and to waive
Local Civil Rule 83.1(d). Dkt. No. 1 ¶ 2. But to date, no attorney has appeared on
Langadinos's behalf. *See* Dkt.

on the WSBA's website. *Id.* ¶ 24. He alleges the website was not working properly and that it repeatedly rejected his completed applications. *Id.* ¶ 25. Langadinos has "thyroid eye disease, exophthalmos" and a "neurogenic bladder disorder," which prevent him "from staring at a computer screen for an extended period of time." *Id.* According to Langadinos, the WSBA's website, however, did not offer "Job Access with Speech" or "other computer applications for visually impaired applicants." *Id.* ¶ 5. By his estimate, Langadinos called the WSBA about eight times to report that its website "was not working properly." *Id.* ¶ 28.

Langadinos also mailed and faxed a letter to Gus Quinones, the WSBA's Admissions Manager, on March 27, 2020, requesting an accommodation for his disabilities. *Id.* ¶ 30. In his letter, Langadinos explained that his medical treatment and "neurogenic bladder disorder requiring [him] to catheterize and suffer pain throughout the day[,]" made it "very inconvenient" to spend multiple hours a day trying "to access the web site without any progress" and, as a reasonable accommodation, he requested "to receive a hard copy application" for the July 2020 bar exam. Dkt No. 1 at 29-31. The WSBA did not respond to Langadinos's letter. *Id.* ¶ 31.

On June 12, 2020, the State Supreme Court issued an order modifying the Washington Admission and Practice Rules (APR) 3 and 4. The order granted applicants the option of receiving a diploma privilege to practice in Washington so long as they were already registered to take the July or September 2020 bar examination and they received a Juris Doctorate from an ABA accredited law school. *Id.* ¶ 33; *see also id.* at 53-54.

1    Langadinos was not registered to take the 2020 bar examination when the

2    State Supreme Court instituted the diploma privilege. Langadinos contacted the

3    court about his failed attempts to register. Specifically, "[d]uring the week of June

4    15, 2020," Langadinos contacted Lisa Armstrong, the State Supreme Court's

5    Administrative Coordinator. Dkt. No. 1 at 70 ¶ 9. At some point, he also wrote the

6    State Supreme Court. *See id.* ¶ 53.

7    On June 25, 2020, Chief Justice Debra Stephens emailed Langadinos. She

8    began by saying, "[t]hank you for your email and letter requesting an expansion of

9    the Diploma Privilege to your circumstances . . . ." *Id.* at 50. And ended by saying,

10   "[t]he balance of interests counsels against further modification of the court's order,

11   though I appreciate this is disappointing to you, and your circumstances are

12   unfortunate." *Id.* at 51.

13   For the next several weeks, Langadinos communicated with multiple WSBA

14   staff members, asking that he be granted the diploma privilege given his failed

15   attempts to register—through no fault of his own, he alleges—and unanswered

16   reasonable accommodation request. On June 26, 2020, Langadinos spoke to the

17   WSBA Associate Director for Regulatory Affairs, Robert W. Henry. Dkt. No. 1

18   ¶¶ 38, 40-42. On July 3, 2020, Langadinos spoke with WSBA General Counsel Jean

19   McElroy. *Id.* ¶ 44. In an email, McElroy requested further evidence of Langadinos's

20   prior registration attempts in March, April, and May 2020. *Id.* at 42.

21   On August 3, 2020, Langadinos's then-attorney, James Neyman, submitted a

22   "formal petition" for diploma privilege via "first class U.S. mail as well as email" to

23   Lisa Amatangel, Associate Director for Litigation and Internal Operations for the

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 4

Office of General Counsel. *Id.* at 60-67. The WSBA maintained that Langadinos was ineligible for diploma privilege under State Supreme Court's order. *Id.* at 75.

Langadinos also contacted the Clerk's Office of the State Supreme Court on September 1, 2020. Dkt. No. 1 at 90. In response, a clerk wrote that "by court rule, the administration of the bar examination is delegated to the WSBA" and "[t]here is no process for appealing such individual determinations [about accommodations] to the Supreme Court." *Id.* at 89.

On February 23, 2023, Langadinos filed a complaint, alleging WSBA and the State Supreme Court violated Title II of the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, the Washington Law Against Discrimination (WLAD), and the Fourteenth Amendment. *Id.* ¶¶ 48-105. Langadinos further alleges the state-law claim of intentional infliction of emotional distress. *Id.* ¶¶ 106-111.

### 3.   DISCUSSION

## 3.1   Legal standards.

### 3.1.1      Rule 12(b)(1).

The Court must dismiss a complaint under Rule 12(b)(1) if it lacks subject matter jurisdiction. Thus, an action will be dismissed if it (1) does not arise under the Constitution, laws, or treaties of the United States, or falls outside one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *See Baker v. Carr*, 369 U.S. 186, 198 (1962).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

A Rule 12(b)(1) jurisdictional attack may be facial, in which the defendant asserts the allegations within the complaint are not enough on their face to invoke federal jurisdiction, or factual, in which the defendant disputes the truth of the factual claims. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In a factual attack, however, "[t]he court need not presume the truthfulness of the plaintiff's allegations," and it may "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039.

### 3.1.2    Rule 12(b)(6).

The Court will grant a Rule 12(b)(6) motion to dismiss only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than probability, "but it asks for more than a sheer possibility" that a defendant did something wrong. *Id.* (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). A plaintiff must have pled "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

When considering a motion to dismiss, the Court accepts factual allegations pled in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted).

### 3.2 The *Rooker-Feldman* doctrine bars Langadinos's claims for injunctive and declaratory relief.

The defendants raise multiple grounds for dismissing Langadinos's complaint, but the Court begins with their jurisdictional challenges since all other issues will become moot if the Court lacks subject matter jurisdiction. *See Khalaj v. United States*, 474 F. Supp. 3d 1029, 1033 (D. Ariz. 2020). The State Supreme Court

1    and the WSBA both argue that the *Rooker-Feldman* doctrine divests the Court of

2    subject matter jurisdiction.[2]

3          The *Rooker-Feldman* doctrine derives from two Supreme Court cases: *Rooker*

4    *v. Fidelity Tr. Co.,* 263 U.S. 413 (1923), and *D.C. Ct. of Appeals v. Feldman,* 460

5    U.S. 462 (1983). "It stands for the relatively straightforward principle that federal

6    district courts do not have jurisdiction to hear de facto appeals from state-court

7    judgments." *Carmona v. Carmona,* 603 F.3d 1041, 1050 (9th Cir. 2010). And it is

8    usually reserved for those "cases brought by state-court losers complaining of

9    injuries caused by state-court judgments rendered before the district court

10   proceedings commenced and inviting district court review and rejection of those

11   judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

12   (2005).

13         The Ninth Circuit takes a two-step approach to the *Rooker-Feldman* doctrine.

14   First, the court must determine whether the plaintiff is seeking a "forbidden de

15   factor appeal" of a state court judicial decision. *Noel v. Hall*, 341 F.3d 1148, 1158

16

17   ─────────────────────────
     [2] The State Supreme Court also argues the case should be dismissed under the
18   *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 41 (1971) ("forbidding
     federal courts to stay or enjoin pending state court proceedings except under special
19   circumstances."). *Younger* abstention is a doctrine of equitable restraint, not a
     jurisdictional limitation. *Ohio Civil Rts. Comm'n v. Dayton Christian Sch., Inc.,* 477
20   U.S. 619, 626 (1986). It applies to state civil proceedings when, among other
     requirements, the proceeding is ongoing and constitutes a quasi-criminal
21   enforcement action. *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d
     655, 657 (9th Cir. 2020). The State Supreme Court fails to identify an ongoing case
22   implicating a quasi-criminal enforcement action in state court that was pending at
     the time Langadinos filed this action in federal court. Additionally, because the
23   Court finds it lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine
     it declines to consider whether it should abstain under *Younger*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

(9th Cir. 2003). Then, and "[o]nly when there is already a forbidden de facto appeal" found, must the court consider whether the issues in the federal case are so "inextricably intertwined" with the state court judicial decision from which the forbidden appeal arises. *Id.*

Thus, the Court turns first to whether Langadinos seeks a forbidden de facto appeal.

### 3.2.1    Langadinos seeks a forbidden de facto appeal.

"To determine whether an action functions as a de facto appeal, we pay close attention to the relief sought by the federal-court plaintiff." *Hooper v. Brnovich*, 56 F.4th 619, 624 (9th Cir. 2022) (internal quotations omitted). "A 'forbidden de facto appeal under *Rooker-Feldman*' arises 'when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court.'" *Id.* (quoting *Noel,* 341 F.3d at 1163).

Langadinos primarily claims he was "wrongfully deprived" the diploma privilege option and thus admission into the Washington bar. Dkt. No. 1 at 25. Among other things, he seeks an injunction granting him diploma privilege bar admission and a declaratory judgment settling the dispute "as to the validity of . . . [Langadinos's] right to be awarded diploma privilege." *Id.* at 16, 25. He alleges the State Supreme Court and WSBA should have expanded the diploma privilege, allowing him to apply for the July 2020 bar exam after the cutoff because the WSBA's website was not working properly when he tried to register earlier. In short, Langadinos argues the State Supreme Court and WSBA reached the wrong

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

decision about the application of the diploma privilege, and he seeks review in federal court. *See Hooper,* 56 F.4th at 624 (an action is a de facto appeal "[w]here the federal plaintiff complains of harm caused by a state court judgment that directly withholds a benefit from him based on an allegedly erroneous ruling by that court. . .." (internal quotation marks omitted)).

But before the Court can determine whether this action constitutes a de factor appeal for purposes of *Rooker-Feldman*, it must determine whether the State Supreme Court and WSBA's decision *not* to expand or modify the diploma privilege for Langadinos constitutes a judicial decision. The Supreme Court analyzed this question in *Feldman.* There, two applicants sought membership in the District of Columbia bar without examination, but the D.C. bar's Committee on Admissions denied their applications because they did not satisfy the rule requiring applicants to be graduates of approved law schools. *Id.* at 465-66, 471-73. They petitioned the D.C. Court of Appeals—D.C.'s highest "state" court—seeking a waiver of the rule. *Id.* One applicant also wrote a letter to the Chief Judge presenting his case for why the rule should not apply to him, but the Chief Judge responded stating that the court would not waive the rule. *Id.* at 467-68. The court eventually issued orders denying the petitions, and the applicants filed a federal lawsuit in the U.S. District Court for the District of Columbia. *Id.* at 467, 472-73.

The Supreme Court considered whether the proceedings before the D.C. Court of Appeals were judicial, administrative, or ministerial in nature because if they were judicial, only the Supreme Court could hear a direct appeal since the decision was made by a state's highest court. *Id.* at 476-79. The Court held that the

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 10

decision to deny the bar applications involved a "judicial inquiry" and was thus judicial in nature because "the court was called upon to investigate, declare, and enforce liabilities as they stood on present or past facts and under laws supposed already to exist." *Id.* at 477-79 (cleaned up).

The decision denying Langadinos's admission into Washington practice is similarly judicial in nature. To start, the power to determine who may practice law in Washington is "vested exclusively" in the State Supreme Court. *State v. Cook*, 525 P.2d 761, 763 (Wash. 1974). In the exercise of its inherent and plenary authority to regulate law practice in Washington, the State Supreme Court formulates the rules governing the admission to practice, *City of Seattle v. Ratliff*, 667 P.2d 630, 632 (Wash. 1983), and "authorizes and supervises the [WSBA's] activities," *Beauregard v. Wash. State Bar Ass'n*, 480 P.3d 410, 416 (Wash. 2021) (quoting Wash. Rules of General Application 12.2) ("[T]he Board of Governors, acting in [the area of attorney admissions], is an arm of the [State Supreme Court]"). The WSBA, in turn, reviews all applicants to determine whether they have met "all the requirements for admission" before "recommend[ing] to the [State] Supreme Court the admission or rejection" of any applicant. APR 5(k). But the power to admit or reject rests always with the State Supreme Court as one of the powers inherent in the judiciary. *Application of Schatz*, 497 P.2d 153, 155 (Wash. 1972).

Langadinos made a "judicial inquiry" when he asked the WSBA and the State Supreme Court to investigate the circumstances of his failure to register timely for the bar exam and to modify the State Supreme Court's order establishing the

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 11

diploma privilege for attorney admission. *See Feldman,* 460 U.S. at 479. Between June and September 2020, Langadinos spoke with various WSBA staffers and corresponded with Justice Stephens about his requested "expansion" of the diploma privilege. *See* Dkt. No. 1 at 50 (email from Justice Stephens saying "[t]hank you for your email and letter requesting an expansion of the Diploma Privilege to your circumstances"); *see also* Dkt. No. 1 ¶ 53 ("Langadinos exhausted numerous administrative remedies . . . by filing and writing to the defendant WA Supreme Court[.]"). His efforts also included a "formal petition" through counsel to WSBA regarding his request. In response, the WSBA and Justice Stephens reviewed their own records and the information submitted by Langadinos.

Exercising its inherent judicial power, the State Supreme Court enforced its attorney admission rules when Justice Stephens and the WSBA determined that Langadinos could not avail himself of the diploma privilege under the circumstances. In her email to Langadinos, Justice Stephens found that an exemption from the rules was unwarranted, stating "[t]he balance of interests counsels against further modification of the court's order, though I appreciate this is disappointing to you, and your circumstances are unfortunate." Dkt. No. 1 at 51. Later, the WSBA's Associate Director of Litigation reiterated the message that Langadinos's request for the diploma privilege had been denied. *Id.* at 75. In other words, the State Supreme Court responded to Langadinos's judicial inquiry with a declaration of the state of "liabilities as they stood on present or past facts and under laws supposed already to exist." *Feldman*, 460 U.S. at 479.

1    This case presents a judicial decision as contemplated by *Feldman*. The Sixth

2    Circuit reached a similar conclusion in *Raymond v. Moyer*, 501 F.3d 548 (2007).

3    Although not binding, the Court finds *Raymond* persuasive on the subject. In

4    *Raymond,* an applicant claimed he was denied admission to the Ohio bar without

5    any explanation. *Id.* at 549. He filed a "motion for clarification and/or

6    reconsideration of his application," but his request was denied, again with no

7    explanation. *Id.* He sued in federal court alleging the Ohio Supreme Court violated

8    his constitutional rights. The Sixth Circuit, however, dismissed the applicant's

9    claims under the *Rooker-Feldman* doctrine because the Ohio Supreme Court's

10   decision was judicial in nature since it had original jurisdiction over bar admissions

11   and the court found the applications lacking as measured against the existing bar

12   admission rules. *Id.* at 552-53.

13   Similarly, in *In re Summers*, a case discussed extensively in *Feldman* and

14   *Raymond*, the Supreme Court held that the Illinois Supreme Court's refusal to

15   admit a bar applicant was judicial in nature even though "no entry was placed by

16   the Clerk in the file, on a docket, or in a judgment roll," and the Illinois Supreme

17   Court issued its decision via a letter to the applicant, like Justice Stephen's email,

18   without disclosing its reasoning. *In re Summers*, 325 U.S. 561, 567 n.8 (1945).

19   The cases Langadinos cites in opposition are not helpful, as they deal with

20   judicial immunity from suit, not whether decisions are judicial in nature under the

21   *Rooker-Feldman* doctrine. Dkt. No. 14 at 14-15 (citing *Maestri v. Jukoksky*, 860 F.2d

22   50, 52-53 (2d Cir. 1988); *Brewer v. Blackwell*, 692 F.2d 387, 397 (5th Cir. 1982);

23

1    *Sup. Ct. of Virginia v. Consumer's Union of the United States*, 446 U.S. 719, 731-734

2    (1980); and *Georgevich v. Strauss*, 772 F.2d 1078, 1087-88 (3d. Cir. 1985)).

3        Langadinos's other arguments do not warrant a different outcome. He points

4    out that "no case was ever filed or appealed in the Washington State Court system."

5    Dkt. No. 14 at 16. But "'the form of the proceeding is not significant. It is the nature

6    and effect which is controlling.'" *Feldman,* 460 U.S. at 482 (quoting *In re Summers*,

7    325 U.S. at 567). Thus, the fact that it was an email from Justice Stephens, followed

8    by emails and phone calls from the WSBA, instead of a courtroom and judicial order

9    conveying the denial, does not change the end judgment.

10       Langadinos also claims Justice Stephens was not "made aware" of all the

11   facts. Dkt. No. 14 at 13. This argument, however, speaks to the quality of the

12   decision reached, not whether it was judicial in nature. Moreover, Langadinos's

13   argument that he was afforded insufficient process does not overcome the preclusive

14   effect of a state judicial decision even if, in his view, it was misguided. *See*

15   *Raymond*, 501 F.3d at 553 (applying the *Rooker-Feldman* doctrine to dismiss a case

16   even though the state supreme court did not provide the bar admission applicant "a

17   hearing, an opportunity to response to any alleged deficiencies to [their] application,

18   or even a reason for denying [their] application.").

19       Accordingly, the Court finds that Langadinos's case is a forbidden de facto

20   appeal.

21

22

23

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS
- 14

1

2

### 3.2.2    The relief Langadinos seeks is inextricably intertwined with the denial of diploma privilege.

Next, the Court must determine what issues are "inextricably intertwined" with Langadinos's forbidden appeal. "'Claims are inextricably intertwined if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Hooper,* 56 F.4th at 624-25 (quoting *Cooper v. Ramos,* 704 F.3d 772, 779 (9th Cir. 2012)). "Cases involving bar admission rules . . . fall in this category." *Noel,* 341 F.3d at 1158. With these principles in mind, the Court turns to the relief requested by Langadinos.

Langadinos alleges seven causes of action. In the first two, he seeks an injunction granting him the diploma privilege and a declaratory judgment settling the dispute "as to the validity of . . . [Langadinos's] right to be awarded diploma privilege." Dkt. No. 1 at 13-17. Langadinos asserts a Section 1983 claim as his fifth cause of action, alleging that Fourteenth Amendment procedural due process rights were violated when the State Supreme Court and WSBA refused to modify the terms of the diploma privilege for him. *Id.* at 21. These claims are unmistakably intertwined with Langadinos's de facto appeal since granting the relief requested would reverse the State Supreme Court's decision regarding the diploma privilege. It is immaterial that Langadinos frames part of his federal complaint as a constitutional challenge to the state court's actions because, at bottom, he still alleges legal error or errors by the state court and reversal as his remedy. *Cooper*, 704 F.3d at 781.

Langadinos's remaining causes of action are a different story. He also brings federal and state disability discrimination claims (causes of action three, four and six) and the tort of outrage (cause of action seven). While these claims are perhaps *intertwined* with the state court decision "[i]n an ordinary language sense," they fall outside the "specialized meaning" of "inextricably intertwined" for *Rooker-Feldman* purposes. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004).

The Ninth Circuit analyzed this distinction in *Kougasian*. There, a widow filed two unsuccessful state court lawsuits against the operator of a ski area following her husband's death. *Id.* at 1137-39. She later filed a federal lawsuit under diversity jurisdiction and asserted seven causes of action, including extrinsic fraud on the state court, wrongful death, premises liability, and intentional and negligent infliction of emotional distress. *Id.* at 1139. The Ninth Circuit held that the *Rooker-Feldman* doctrine did not deprive the district court of jurisdiction, explaining as follows:

> [The plaintiff] does not seek to set aside the judgments of the [state court] based on alleged legal errors by those courts. Rather, she seeks to set aside these judgments based on the alleged extrinsic fraud by defendants that produced those judgments. Nor does [the plaintiff] seek damages based on any alleged legal error by the state courts. Rather, she seeks damages based on the alleged wrongful behavior of the defendants.

*Id.* at 1139. The Ninth Circuit held that, even in the absence of the plaintiff's fraud claims, *Rooker-Feldman* still would not bar her other causes of action because she "does not allege legal errors by the state courts; rather, she alleges wrongful acts by the defendants, such as negligently designing the ski run and negligently placing or failing to remove the rock." *Id.* at 1142.

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS
- 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Like the plaintiff in *Kougasian,* Langadinos seeks redress for allegedly illegal acts or omissions, separate from the state court decision about the diploma privilege. The harm stems from his claim that the defendants discriminated against him by failing to "render th[ier] facilities readily accessible and usable to individuals with [his] disabilities" and that their conduct otherwise constituted the intentional inflection of emotional distress. Dkt. No. 1 ¶¶ 75, 109. Thus, Langadinos's claims for disability discrimination and outrage are not barred by the *Rooker-Feldman* doctrine.

### 3.3 Langadinos's disability discrimination claims.

Langadinos alleges disability discrimination against the State Supreme Court, WSBA, the WSBA Board of Governors, and WSBA employees Lisa Amatangel and Julie Shankland for violating Title II of the Americans with Disabilities Act, the Rehabilitation Act, and WLAD.

Title II of the ADA and Section 504 of the Rehabilitation Act both prohibit disability discrimination. To state a claim of disability discrimination under Title II of the ADA, Langadinos must show that "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021) (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001)). The

1
2
3
4
5
6
7
8
9
10
11
12
13

elements of a prima facie case under Section 504 are the same, with the added "requirement that the plaintiff prove that 'the program receives federal financial assistance.'" *Id.* (quoting *Duvall,* 260 F.3d at 1135). The prima facie elements of a public accommodation discrimination claim under the WLAD are similar: the plaintiff must show that "(1) they have a disability recognized under the statute; (2) the defendant's business or establishment is a place of public accommodation; (3) they were discriminated against by receiving treatment that was not comparable to the level of designated services provided to individuals without disabilities by or at the place of public accommodation; and, (4) the disability was a substantial factor causing the discrimination.*" Fell v. Spokane Transit Auth.*, 911 P.2d 1319, 1328 (Wash. 1996); *see also Duvall*, 260 F.3d at 1135. Because the elements of these claims do not differ in any relevant respect, they may be analyzed together. *Duvall*, 260 F.3d at 1135.

14
15
16
17

    At its most basic level, Langadinos's theory of discrimination is that Defendants failed to accommodate his disability by offering an ADA-compliant website and by failing to honor his reasonable accommodation request for a hardcopy of the bar application.

18
19

### 3.3.1   Langadinos fails to state a disability discrimination claim against the Washington State Supreme Court.

20
21
22
23

    The State Supreme Court argues that Langadinos has failed to allege sufficient facts to state a plausible discrimination claim. They have a point. Langadinos's disability discrimination claims against the State Supreme Court fail for the simple reason that the court is not the party allegedly responsible for the

discrimination. On this score, Langadinos places the WSBA's website at the center of his claims, *see, e.g.*, Dkt. No. 1 ¶¶ 24, 28, 37, and identifies the WSBA, not the State Supreme Court, as the recipient of his reasonable accommodation request; Dkt. No. 1 ¶¶ 28, 30-31; Dkt. No. 1 at 29. This dooms his disability discrimination claim against the State Supreme Court because he has failed to allege factual details showing in any way that the State Supreme Court was responsible for the disability discrimination he allegedly suffered.

Accordingly, Langadinos has failed to state a plausible ADA, WLAD, or Rehabilitation Act claim against the State Supreme Court.

### 3.3.2   Langadinos may proceed on parts of his disability discrimination claim against the WSBA.

The WSBA also argues that Langadinos fails to state a claim of disability discrimination because he was not otherwise qualified to participate in the diploma privilege option and because he "never notified the WSBA of the disability alleged in his complaint or requested that the WSBA modify anything to accommodate ***that*** disability." Dkt. No. 11 at 19 (emphasis in original).

The WSBA takes an unnecessarily cabined view of Langadinos's disability discrimination claim, focusing narrowly on whether he qualifies for the diploma privilege, his failed attempts to register for the July 2020 bar exam, and the nature of his disability. But when a plaintiff proceeds pro se—as Langadinos does here—courts must "'construe the pleadings liberally' and 'afford the petitioner the benefit of any doubt.'" *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (internal quotation omitted). Langadinos alleges the WSBA failed to provide a reasonable

accommodation for his disabilities in the form of an accessible website and hardcopy bar application—this is enough to state a claim. *See Duvall,* 260 F.3d at 1140 ("[Plaintiff] provided sufficient evidence to create a triable issue as to whether [the defendants] . . . had notice of his need for the accommodation involved and that they failed despite repeated requests to take the necessary action."). His claims—and the WSBA's obligations in this arena—do not turn on whether he was eligible for the diploma privilege or registered for the July 2020 bar exam. Moreover, any dispute about the nature of Langadinos's claimed disabilities and what information was conveyed to the WSBA go to the merits of his claim and cannot be resolved at this early stage of the case.

Several caveats apply, however. Langadinos does not allege that the WSBA is a "program [that] receives federal financial assistance," which is a prerequisite for a Rehabilitation Act claim. Therefore, his Rehabilitation Act claim must be dismissed for failure to state a claim.

Second, neither the ADA, the Rehabilitation Act, nor the WLAD allow Langadinos to sue WSBA employees in their individual capacities for public accommodation discrimination. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("individual defendants cannot be held personally liable for violations of the ADA"); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding plaintiff cannot sue state officials in their individual capacities to vindicate rights created by the ADA or the Rehabilitation Act); *Doscher v. Timberland Reg'l Libr.*, No. 3:22-CV-05340-RJB, 2022 WL 4534403, at *5 (W.D. Wash. Sept. 28, 2022) (holding plaintiff could not bring a WLAD public accommodation claim against

1

2

individually named defendants because "the WLAD does not include individuals in

its definition of 'place of public accommodation.'"); *Matthews v. NCAA*, 179 F. Supp.

3

2d 1209, 1229 (E.D. Wash. 2001) (evaluating whether the defendant meets "the

4

definition for a place of public accommodation").

5

Thus, the Court dismisses Langadinos's ADA, Rehabilitation Act, and WLAD

6

claims against Shankland and Amatangel.

7

In the end, what remains is Langadinos's ADA and WLAD public

8

accommodation discrimination claims against the WSBA.[3]

9

10

**3.4    Langadinos fails to state a claim for the intentional infliction of
emotional distress.**

11

Langadinos alleges that Defendants' conduct was outrageous because they

12

gave him the "run around" and lied to him about various things. Dkt. No. 1 at 24-25.

13

Under Washington law, a claim for the intentional infliction of emotional distress—

14

sometimes called the tort of outrage—requires the proof of three elements: "(1)

15

extreme and outrageous conduct; (2) intentional or reckless infliction of emotional

16

distress; and (3) actual result to the plaintiff of severe emotional distress." *Dicomes*

17

*v. State*, 782 P.2d 1002, 1012 (Wash. 1989) (internal citations omitted). "The

18

conduct in question must be *so outrageous in character, and so extreme in degree, as*

19

20

21

22

23

---

[3] The WSBA argues that it is a "judicial agent," Dkt. No. 11 at 17, and thus that its
shares in the State Supreme Court's Eleventh Amendment immunity. But the
WSBA does not discuss the Ninth Circuit's recent opinions in *Crowe v. Oregon State
Bar*, 989 F.3d 714, 730 (9th Cir. 2021) and *Kohn v. State Bar of California*, 87 F.4th
1021, 1037 (9th Cir. 2023). Because the issue of immunity has not been fully briefed
in light of *Crowe* and *Kohn,* this Court is unable to make a definitive determination
at this early stage of the case, so it would be unwise to comment further.

1
2
3
4
5
6
7

*to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" *Id.* (emphasis in original) (citations omitted). "[I]t is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Id.* at 1013 (citation omitted). When conduct offered to establish outrage is not extreme, "a court must withhold the case from a jury notwithstanding proof of intense emotional suffering." *Brower v. Ackerley,* 943 P.2d 1141, 1149 (1997).

8
9
10

Even taken as true, Langadinos's claims do not meet the high standard necessary to support an outrage claim. His claim for the intentional infliction of emotional distress is therefore dismissed as to all defendants.

11
12

**3.5    The Court quashes service of process as to WSBA Defendants and grants Langadinos 21 days to effect proper service on all WSBA Defendants.**

13
14
15
16
17
18
19
20
21

WSBA moves to dismiss Langadinos's case under Fed. R. Civ. P. 12(b)(5) for failing to properly serve it with legal process. Dkt. No. 11 at 13-14. Specifically, WSBA argues because Langadinos filed "blank proofs of service," he failed to comply with Fed. R. Civ. P. 4(l)(1). In his response, Langadinos submits affidavits of service showing that a process server attempted to serve WSBA with process by delivering copies of the complaint and summons to the WSBA Mail Coordinator "A. Tung" on May 23, 2023. Dkt. No. 14-1 at 4. But according to WSBA Defendants, serving the "mail and print services coordinator at the WSBA office" is insufficient under Fed. R. Civ. P. 4(j)(2). The Court agrees.

22
23

1   When a defendant shows insufficient service of process, a "district court has

2   discretion to dismiss an action or to quash service." *S.J. v. Issaquah Sch. Dist. No.*

3   *411*, 470 F.3d 1288, 1293 (9th Cir. 2006). "[S]ervice will ordinarily be quashed and

4   the action preserved where 'there is a reasonable prospect that plaintiff ultimately

5   will be able to serve defendant properly,'" *Montalbano v. Easco Hand Tools, Inc.*,

6   766 F.2d 737, 740 (2d Cir. 1985) (quoting 5 C. Wright & A. Miller, Federal Practice

7   and Procedure § 1354, at 585 (1969)). Further, "[w]here it appears that effective

8   service can be made and there is no unfair prejudice to the defendant, quashing

9   service rather than dismissing the action, and leaving the plaintiff free to effect

10  proper service, is the appropriate course." *Dillard v. Red Canoe Fed. Credit Union*,

11  No. C14-1782JLR, 2015 WL 1782083, at *3 (W.D. Wash. Apr. 17, 2015).

12  Accordingly, the Court will exercise its discretion and treat WSBA's Rule

13  12(b)(5) motion as one to quash service of process rather than dismiss. The court

14  will quash service as to WSBA and grant Langadinos an additional 21 days from

15  the date of this order to accomplish proper service of process pursuant to Fed. R.

16  Civ. P. 4(j)(2). If Langadinos fails to properly serve WSBA within 21 days, WSBA

17  may renew its Rule 12(b)(5) motion to dismiss.

18  **3.6   Leave to amend is granted.**

19  Ordinarily, when a court dismisses a pro se plaintiff's complaint for failure to

20  state a claim, it must grant leave to amend even when no request to amend is made.

21  *Yagman v. Garcetti*, 852 F.3d 966, 976 (9th Cir. 2022). But "[a]n action may be

22  dismissed for lack of subject matter jurisdiction, without leave to amend, when it is

23  clear the jurisdiction deficiency cannot be cured by amendment." *Johnson v. Biden*,

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS
- 23

No. C21-466 MJP, 2021 WL 1894012, at *1 (W.D. Wash. May 11, 2021) (quoting

*May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980)). And

leave to amend may be denied where amendment would be futile. *Flowers v. First*

*Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002).

The Court concludes that leave to amend Langadinos's causes of action for a

preliminary injunction, declaratory relief, and Section 1983 due process would be

futile because those claims seeking the diploma privilege are barred by the *Rooker-*

*Feldman* doctrine. Similarly, no amendment could cure Langadinos's public

accommodation discrimination claims against the individually named defendants.

Therefore, these claims are dismissed with prejudice and without leave to amend.

As to Langadinos other claims against the State Supreme Court (i.e., his

public accommodation claims under the ADA, WLAD, and Rehabilitation Act), the

Court declines to grant him leave to amend his complaint without first requiring

him to comply with Local Rule 15, which provides that a "party who moves for leave

to amend a pleading . . . must attach a copy of the proposed amended pleading as an

exhibit to the motion or stipulated motion," and allow briefing both in support of

and opposition to amendment. Langadinos may also address his now-dismissed

Rehabilitation Act claim against the WSBA and his intentional infliction of

emotional distress claim against all defendants.

Given the problems identified with some of Langadinos's claims, perhaps

amendment is futile, but the Court will provide him a final opportunity to allege a

plausible case against the defendants. Langadinos must move to amend his

complaint by no later than 30 days from the date of this order.

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS
- 24

1    In his response to the WSBA's and the State Supreme Court's motions to

2 dismiss, Langadinos styles his response as a "preliminary" and "first opposition"

3 and requests leave to submit a revised version after his scheduled surgery. The

4 Local Civil Rules, however, do not entitle a litigant to more than one opposition

5 brief. Therefore, the Court denies Langadinos's request.

6    Langadinos also filed a document styled as a notice of intent to file a

7 surreply. Because Langadinos did not file any additional documents, the Court

8 construes this "notice" as Langadinos's surreply and considers his request to strike

9 "irrelevant personal attacks on how many prior lawsuits he filed[.]" In its motion to

10 dismiss, the WSBA includes a "facts" section discussing Langadinos's prior lawsuits.

11 Dkt. No. 11 at 5-8. The Court agrees these references to other suits are neither

12 pertinent nor appropriate for a motion to dismiss. Accordingly, the Court STRIKES

13 this material under Local Civil Rule 7(g) and did not consider it in its above

14 analysis.

## 4. CONCLUSION

15

16    In sum, the Court GRANTS in part and DENIES in part the WSBA's and

17 State Supreme Court's motion to dismiss, and orders as follows:

18    • Langadinos's request for an injunction granting him the diploma privilege

19      and a declaratory judgment affirming his right to be awarded diploma

20      privilege are DENIED with prejudice.

21    • Langadinos's Section 1983 claim against the State Supreme Court and

22      WSBA, alleging that his Fourteenth Amendment procedural due process

23      rights were violated, is DISMISSED with prejudice.

- Langadinos's disability discrimination claims against individual Defendants Lisa Amatangel and Julie Shankland are DISMISSED with prejudice.

- Langadinos's may seek leave to amend under Rule 15 no later than 30 days from the date of this order, for his public accommodation claims under the ADA, WLAD, and Rehabilitation Act against the State Supreme Court, his Rehabilitation Act claim against the WSBA, and his intentional infliction of emotional distress claim against all defendants.

- Langadinos must properly serve WSBA and file a proof of service within 21 days of the date of this order.

Dated this 15th day of March, 2024.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 26