UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GREGORY LANGADINOS,<br><br>               Plaintiff,<br><br>   v.<br><br>WASHINGTON STATE BAR ASSOCIATION, WASHINGTON STATE BAR ASSOCIATION BOARD OF GOVERNORS, LISA AMATANGEL, Associate Director; Litigation and Internal Operations, JULIE SHANKLAND, Coordinator; ADA/504 WSBA, WASHINGTON STATE SUPREME COURT,<br><br>               Defendants. | CASE NO. 2:23-cv-250<br><br>ORDER DENYING MOTION TO AMEND |

## 1. INTRODUCTION

Proceeding pro se, Plaintiff Gregory Langadinos moves for leave to file an amended complaint. Dkt. No. 47. Because his proposed amendments are futile and exceed the scope of amendment previously permitted,[1] the motion is DENIED.

---

[1] In its prior order, the Court also allowed Langadinos to proceed on his Washington Law Against Discrimination (WLAD) claim against the WSBA, finding that the

ORDER DENYING MOTION TO AMEND - 1

Langadinos may proceed only on the remaining claim in his original complaint—his ADA public accommodation discrimination claim against the WSBA.

## 2. BACKGROUND

The Court recounts the facts alleged in Langadinos's his original complaint. Langadinos, a California resident, earned a juris doctor degree from the Appalachian School of Law on May 8, 2004.[2] Dkt. No. 1 ¶¶ 6, 36; *see also* Dkt. No. 1 at 100. Langadinos alleges that on consecutive days from March 3 to March 6, 2020, he "repeatedly attempted to apply over the internet to register" and pay for the July 2020 bar exam on the WSBA's website but that he encountered difficulties that prevented him from registering. *Id.* ¶ 24–25. Langadinos, who has "thyroid eye disease, exophthalmos" and a "neurogenic bladder disorder," claims these conditions prevented him "from staring at a computer screen for an extended period of time." *Id.* He claims the WSBA's website was non-ADA compliant because it did not offer "Job Access with Speech" or "other computer applications for visually impaired applicants." *Id.* ¶ 5. Langadinos estimates that he called the WSBA about eight times to report that its website "was not working properly." *Id.* ¶ 28.

On March 27, 2020, he mailed and faxed a letter to the WSBA's Admissions Manager, requesting an accommodation for his disabilities. *Id.* ¶ 30. In his letter,

---

WSBA failed to adequately argue its case for Eleventh Amendment immunity. Dkt. No. 38 at 21 n.3. Because in its response to Langadinos's motion to amend, the WSBA provides the relevant standard and the Court agrees immunity applies, it dismisses Langadinos's WLAD claim against the WSBA as barred by the Eleventh Amendment. *See supra* Section 3.3.2.

[2] The complaint is silent about whether Langadinos has been admitted to a state bar since his graduation or otherwise engaged in the practice of law. *See generally* Dkt. No. 1.

Langadinos explained that his medical treatment and "neurogenic bladder disorder requiring [him] to catheterize and suffer pain throughout the day[,]" made it "very inconvenient" to spend multiple hours a day trying "to access the web site without any progress" and, as a reasonable accommodation, he requested "to receive a hard copy application" for the July 2020 bar exam. Dkt No. 1 at 29-31. The WSBA did not respond to Langadinos's letter. *Id.* ¶ 31.

On June 12, 2020, the Washington Supreme Court issued an order modifying Washington Admission and Practice Rules (APR) 3 and 4. The order granted applicants the option of receiving a "diploma privilege" to practice law in Washington without taking the bar exam, so long as they were already registered to take the July or September 2020 bar examination and had received a Juris Doctorate from an ABA accredited law school. *Id.* ¶ 33; *see also id.* at 53–54.

Because Langadinos was not registered to take the 2020 bar examination, he was ineligible for the diploma privilege. Langadinos contacted the WSBA and the State Supreme Court about his failed attempts to register. Specifically, "[d]uring the week of June 15, 2020," Langadinos contacted Lisa Armstrong, the State Supreme Court's Administrative Coordinator. Dkt. No. 1 at 70 ¶ 9. At some point, he also wrote the State Supreme Court. *See id.* ¶ 53. On June 25, 2020, Chief Justice Debra Stephens emailed Langadinos. She began by saying, "[t]hank you for your email and letter requesting an expansion of the Diploma Privilege to your circumstances . . . ." *Id.* at 50. And ended by saying, "[t]he balance of interests counsels against further modification of the court's order, though I appreciate this is disappointing to you, and your circumstances are unfortunate." *Id.* at 51.

ORDER DENYING MOTION TO AMEND - 3

Despite attempts by Langadinos to change this outcome, WSBA maintained that Langadinos was ineligible for diploma privilege under State Supreme Court's order. *Id.* at 75. Langadinos also contacted the Clerk's Office of the State Supreme Court on September 1, 2020. Dkt. No. 1 at 90. In response, a clerk wrote that "by court rule, the administration of the bar examination is delegated to the WSBA" and "[t]here is no process for appealing such individual determinations [about accommodations] to the Supreme Court." *Id.* at 89.

On February 23, 2023, nearly three years later, Langadinos filed a complaint, alleging WSBA and the State Supreme Court violated Title II of the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, the Washington Law Against Discrimination (WLAD), and the Fourteenth Amendment. *Id.* ¶¶ 48–105. He sought an injunction ordering the WSBA and State Supreme Court to grant him diploma privilege as well as a declaratory judgment affirming his right to be awarded diploma privilege. Langadinos also alleged the state-law claim of intentional infliction of emotional distress against all Defendants. *Id.* ¶¶ 106- 111. Finally, he raised ADA And WLAD claims against individuals Lisa Amatangel and Julie Shankland. Defendants moved to dismiss all claims. Dkt. Nos. 10, 11.

In a detailed order, the Court granted in part and denied in part Defendants' motions to dismiss and granted Langadinos limited leave to amend. Dkt. No. 38 at 25–26. Specifically, the Court:

(1) denied with prejudice Langadinos's request for an injunction granting him diploma privilege and a declaratory judgment affirming his right to be awarded diploma privilege based on the *Rooker-Feldman* doctrine;

(2) dismissed with prejudice Langadinos's Section 1983 Fourteenth Amendment claims against the Washington Supreme Court and WSBA as barred by the *Rooker-Feldman* doctrine;

(3) dismissed with prejudice all claims against individual defendants Lisa Amatangel and Julie Shankland because neither the ADA nor WLAD allows plaintiffs to sue individuals for public accommodation discrimination;

(4) allowed Langadinos to proceed with his ADA and WLAD public accommodation discrimination claims against WSBA. *Id.*

The Court also granted Langadinos "limited leave" to file a proposed amended complaint, re-pleading "his public accommodation claims under the ADA, WLAD, and Rehabilitation Act against the State Supreme Court, his Rehabilitation Act claim against the WSBA, and his intentional infliction of emotional distress claim against all defendants." *Id.* The Court cautioned that this would be Langadinos's "final opportunity to allege a plausible case against the defendants." *Id.* at 24.

Rather than focusing on the deficiencies identified in the Court's order, Langadinos filed a proposed amended complaint that reasserts dismissed claims, adds new theories, and attempts to join new parties. Dkt. No. 48 at 20–54.

### 3. DISCUSSION

**3.1 Legal standard.**

Under Rule 15(a), leave to amend must be given freely as required by justice. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). "This

policy is 'to be applied with extreme liberality.'" *Neaman v. Wash. State Dep't of Corr.*, No. C24-5176 BHS, 2024 WL 3845710, at *1 (W.D. Wash. 2024) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)). Courts consider five factors when determining whether to grant leave to amend under Rule 15: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the [party] has previously amended [its pleadings]." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Of these factors, "prejudice to the opposing party carries the greatest weight." *Neaman*, No. C24-5176 BHS, 2024 WL 3845710, at *1.

### 3.2 Several claims have already been dismissed with prejudice (Counts 9, 10, 12).

The Court previously dismissed with prejudice Langadinos's claims for injunctive and declaratory relief seeking diploma privilege and his Section 1983 claims. Dkt. No. 38 at 25. In short, the Court held that Langadinos sought a de facto appeal of the State Supreme Court's decision not to admit him, and thus, that such claims were barred by the *Rooker-Feldman* doctrine. Dkt. No. 38 at 15. The *Rooker-Feldman* doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state-court judgments." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010). The Court explained its analysis at length in its prior order and declines to repeat it here.

Langadinos's proposed complaint improperly reasserts these claims as Counts Nine, Ten, and Twelve, but these claims remained barred by *Rooker-Feldman*. Langadinos, apparently recognizing this obstacle, urges the Court to

reconsider its prior ruling based on *Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021), which he characterizes as "powerful and precedential." Dkt. No. 47-1 at 2–3, 12; Dkt. No. 59 at 8–11. But *Behr*, an Eleventh Circuit case, is not controlling authority in this Circuit. And in any event, the *Behr* court's articulation of *Rooker-Feldman* as a "narrow doctrine" is consistent with the Supreme Court's decision in *Exxon Mobil*, which this Court expressly relied on in its prior order. Dkt. No. 38 at 8. The Court correctly applied the narrow interpretation of *Rooker-Feldman* in its original ruling, and *Behr* presents no compelling reason to revisit that analysis.

In Count Nine, Langdinos attempts to replead his procedural due process claim against the WSBA individual Defendants. But this is also inextricably intertwined with the relief already dismissed under the *Rooker-Feldman* doctrine, and thus allowing this proposed amendment would be futile. *See* Dkt. No. 38 at 15.

The attempted repackaging of these claims under the All Writs Act, 28 U.S.C. § 1651, is just as unavailing. The Act does not create a cause of action; it only addresses the court's power. *Cofield v. United States*, 64 F. Supp. 3d 206, 212 (D.D.C. 2014).

The Relation Back Doctrine that Langadinos invokes in his reply brief does not save these claims either. Rule 15(c) addresses whether an amended pleading relates back to the date of the original pleading for statute of limitations purposes. Fed. R. Civ. P. 15(c). It does not revive claims that have been dismissed with prejudice or overcome jurisdictional barriers like the *Rooker-Feldman* doctrine.

### 3.3  Eleventh Amendment immunity bars Langadinos's state-law claims against the State Supreme Court, WSBA, and the individual Defendants acting in their official capacities (Counts 3, 4, 5, 11).

Langadinos's state-law claims against the State Supreme Court, WSBA, and the individual defendants in their official capacities (Counts Three, Four, Five, and Eleven) are barred by the Eleventh Amendment. And his attempt to add the State of Washington as a defendant, Dkt. No. 48 at 2, 13, would be futile for the same reason.

The Eleventh Amendment prohibits suits against a state by its own citizens or citizens of other states in federal court. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). This immunity extends to agencies of the state, including the State Supreme Court. *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 926 (9th Cir. 2017); *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir.1987) (holding that state courts are arms of the state for Eleventh Amendment purposes). Thus, Langadinos's claims against the State fail.

Eleventh Amendment immunity also extends to the WSBA. *Crowe v. Oregon State Bar*, 112 F.4th 1218, 1230 (9th Cir. 2024) ("This immunity extends not just to suits in which the state itself is a named party but also to those against an 'arm of the state.'") (cleaned up). The test for whether an entity is an arm of the state considers three factors: "(1) the [s]tate's intent as to the status of the entity, including the functions performed by the entity; (2) the [s]tate's control over the entity; and (3) the entity's overall effects on the state treasury." *Id.* (quoting *Kohn v. State of California*, 87 F.4th 1021, 1030 (9th Cir. 2023) (en banc)).

The WSBA qualifies as an arm of the state, as Washington formally established the WSBA "as a state agency by legislative enactment." *See Beauregard v. Washington State Bar Ass'n*, 480 P.3d 410, 415 (2021); *see also Eugster v. Washington State Bar Ass'n.*, No. CV 09-357-SMM, 2010 WL 2926237, at *8 (E.D. Wash. July 23, 2010), *aff'd sub nom. Eugster v. Washington State Bar Ass'n*, 474 F. App'x 624 (9th Cir. 2012) (finding that the WSBA is an arm of the state for purpose of Eleventh Amendment immunity). So Eleventh Amendment immunity bars Langadinos's state-law claims against the State Supreme Court and WSBA.

Langadinos's argument regarding Washington House Committee on Civil Rights & Judiciary Legislation (HB 1788 - 2019-20), which he claims sought to "repeal existence of defendant WSBA," does not alter this analysis. Even if the legislature considered reorganizing or dissolving the WSBA, this would not change its current status as a state agency for Eleventh Amendment purposes. The structure and governance of the state bar remain subject to the State Supreme Court's authority. Therefore, Eleventh Amendment immunity bars Langadinos's state-law claims against the State Supreme Court and WSBA.

Claims against state officials in their official capacities are effectively claims against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("We emphasized that official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) ("[The court] treat[s] [the plaintiff's] suit against state officials in their official capacities as a suit against the state of California"). While *Ex parte Young*, 209 U.S.

ORDER DENYING MOTION TO AMEND - 9

123 (1908), permits suits against state officials for prospective injunctive relief, that exception does not apply here because Langadinos's requests for injunctive relief have been dismissed with prejudice.

Langadinos's contention that Congress abrogated the states' Eleventh Amendment immunity for ADA claims is only partially correct. Congress validly abrogated state immunity for ADA Title II claims, but only for conduct that actually violates the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). But Langadinos's state law claims—WLAD, outrage, and fraud—are not subject to this abrogation. These claims remain barred by the Eleventh Amendment.

Accordingly, Langadinos's claims against the individual Defendants Julie Shankland, Lisa Amatangle, and Jon Dawson, in their official capacity fail just like his claims against the State, the State Supreme Court, and the WSBA.

The Eleventh Amendment, however, does not "bar claims for damages against state officials in the *personal* capacities." *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (emphasis in original). But the Court has already held that the WLAD does not allow Langadinos to sue WSBA employees in their individual capacities for public accommodation discrimination. *See* Dkt. No. 38 at 20-21 (citing *Doscher v. Timberland Reg'l Libr.*, No. 3:22-CV-05340-RJB, 2022 WL 4534403, at *5 (W.D. Wash. Sept. 28, 2022) (holding plaintiff could not bring a WLAD public accommodation clam against individually named defendants because "WLAD does not include individuals in its definition of 'place of public accommodation.")). As to Langadinos's remaining state-law claims—outrage and fraud—he does not plead

ORDER DENYING MOTION TO AMEND - 10

sufficient facts to state claims against Shankland, Amatangle, and Dawson.[3]

Accordingly, Langadinos's amended claims cannot be allowed to proceed as it would be futile.

**3.4    Langadinos fails to state federal discrimination claims.**

**3.4.1    Langadinos's ADA claim against the Washington Supreme Court fails (Count 1).**

The Court previously dismissed Langadinos's ADA claim against the Washington Supreme Court because he alleged no facts showing the court was responsible for the discrimination. Dkt. No. 38 at 18-19. His proposed amended complaint does nothing to cure this defect. Langadinos still does not identify the Washington Supreme Court as the recipient of his accommodation requests or allege that the court controlled the WSBA's website. In fact, he admits that "the denial of Title II ADA Accommodations . . . WERE NEVER BEFORE JUDGE DEBORAH STEPHENS." Dkt. No. 48 at 10.

His conclusory assertion in his reply brief that the court "owned, and operated, directed, or controlled the WSBA's web site," Dkt. No. 59 at 11, contradicts his own earlier allegation that "the administration of the bar examination is delegated to the WSBA" and "[t]here is no process for appealing such

---

[3] In the proposed amended complaint, Langadinos alleges that Shankland, Amatangel, and Dawson acted with "[e]vil [m]otive" to discriminate against him because of his disability and Greek ethnicity. Dkt. No. 48 at 2-3. He also alleges that Amatangel and Shankland "created falsehoods" about their job titles and conspired with Dawson to fail to accommodate him. *Id.* at 5, 8. These allegations are merely conclusory and without a factual basis. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) requiring factual allegations "enough to raise a right to relief above the speculative level")

ORDER DENYING MOTION TO AMEND - 11

individual determinations [about accommodations] to the Supreme Court." Dkt. No. 1 at 89.

Accordingly, Langadinos's ADA claim against the State Supreme Court remains deficient, and amendment would be futile.

### 3.4.2    Langadinos's Rehabilitation Act claims also fail (Counts 2, 6).

The Rehabilitation Act applies only to programs receiving federal financial assistance. 29 U.S.C. § 794(a). Langadinos's assertion that the defendants "are all recipients of federal funds," Dkt. No. 48 at 24, is conclusory and contradicted by evidence that the WSBA receives no federal funding. Indeed, the WSBA has presented evidence that it receives no federal funding, which the Court may properly consider under judicial notice. *See* Governor Manual, WSBA (Updated Mar. 17, 2025), available at https://www.wsba.org/about-wsba/who-we-are/board-of-governors/Governor-Manual; Dkt. No. 50 at 16-17; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (judicial notice may be taken "of court filings and other matters of public record."). According to this source, the WSBA is funded "entirely by mandatory membership licensing fees and various user fees, including continuing legal education (CLE) revenues, bar examination fees, practice section dues and Washington State Bar News advertising revenues." *Id.*; *see Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F3d 1005, 1016, n.9 (9th Cir. 2012) ("Although, as a general rule, a district court may not consider materials beyond the pleadings in ruling on a Rule 12(b)(6) motion, one exception to this general rule is that a 'court may take judicial notice of matters of public record

without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute.'" (quoting *Intri–Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir.2007)).

And Langadinos's Section 508 Rehabilitation Act claim (Count Six) fails as a matter of law because that provision applies only to federal agencies. 29 U.S.C. § 794d ("Section 508 . . . applies to all Federal agencies . . . ."); *see* Dkt. No. 53 at 11. Neither the State Supreme Court nor the WSBA is a federal agency.

Thus, Langadinos's Rehabilitation Act claims (Counts Two and Six) remain deficient, and amendment would be futile.

### 3.4.3   Langadinos's Title VI and Section 1981 claims fail (Counts 7, 8).

Langadinos's proposed Title VI and § 1981 claims (Counts Seven and Eight) exceed the scope of amendment the Court permitted. Dkt. No. 38 at 25-26. Even if considered, these claims are facially implausible.

Langadinos alleges that defendants discriminated against him because he is a "WHITE MALE" who "looks like a member of the Italian Mafia, and isn't African-American." Dkt. No. 48 at 35. He provides no factual allegations to support this claim of racial discrimination. *Twombly*, 550 U.S. at 555. Moreover, Title VI applies only to programs receiving federal funding, which the WSBA is not.

In his reply, Langadinos asserts that his Title VI and § 1981 claims are supported by allegations regarding WSBA Deputy Director Dua Abudiab's alleged anti-Israel statements. Dkt. No. 59 at 3-5. But these allegations do not appear in his proposed amended complaint, and even if they did, they would not establish that

Langadinos personally suffered discrimination based on race or ethnicity in connection with his bar application.

### 3.5 Langadinos's motion to amend shows bad faith, which further justifies denial.

Langadinos's disregard for the Court's prior ruling demonstrates bad faith. Rather than focusing on curing the specific deficiencies identified in the Court's prior order, he has attempted to resurrect dismissed claims, add new claims beyond the permitted scope, and join new parties. *See Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) ("In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt."). This approach wastes judicial resources and shows disrespect for court orders, further justifying dismissal.

### 4. CONCLUSION

In sum, Langadinos's proposed amendments are futile and exceed the scope of amendment previously permitted. His motion for leave to amend is DENIED. His ADA public accommodation discrimination claim against the WSBA, as stated in his original complaint, Dkt. No. 1, may proceed. The parties must file a joint status report and discovery plan within fourteen days of this Order. *See* Dkt. No. 8.

Dated this 26th day of March, 2025.

Jamal N. Whitehead
United States District Judge